

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GBOLAHAN R. A. EYIOWUAWI, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | No. 05 C 5216 |
| SERVICE EMPLOYEES ) | |
| INTERNATIONAL UNION ) | Judge William J. Hibbler |
| LOCAL 20, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Pro se Plaintiff Gbolahan R. A. Eyiowuawi ("Eyiowuawi") brings this action against Defendant Service Employees International Union Local 20 ("Union") alleging a violation of Title VII of the Civil Rights Act of 1964 ("Title VII") 42 U.S.C. 2000e *et seq.* and a breach of duty of fair representation under the Illinois Public Labor Relations Act ("Act"). Before this Court is the Union's motion for Summary Judgment pursuant to *Federal Rule of Civil Procedure 56©*. For the following reasons the court GRANTS Defendant's motion for summary judgment.[1]

### I. LOCAL RULE 56.1

Because Eyiowuawi is a pro se litigant, the Union served him with a "Notice to Pro Se

---

[1] The Court ascertains from Plaintiff's response to Defendant's motion for summary judgment that Plaintiff wished to file a motion for summary judgment as well. Unfortunately for Plaintiff, his motion was not properly filed. Plaintiff failed to file the motion with clerk of the district court, as well as give notice to opposing counsel and this Court. While pro se pleadings are liberally construed, *Jones v. Phipps*, 39 F.3d 158, 163 (7th Cir. 1994), this Court does not excuse procedural mistakes made by pro se litigants. *See Members v. Paige*, 140 F.3d 699, 702 (7th Cir. 1998). Moreover, Plaintiff's motion for summary judgment is doomed because he failed to provide a Local Rule 56.1 Statement in support of his motion. *Malec v. Sanford*, 191 F.R.D. 581, 583 (N.D. Ill. 2000)("Local Rule 56.1(a)(3) requires a movant to submit a statement of undisputed material facts that, according to the movant, entitles that party to judgment as a matter of law."). Accordingly, this Court DENIES Plaintiff's motion.

1

Litigant Opposing Motion for Summary Judgment" as required by *Northern District of Illinois, Local Rule 56.2*. This notice explains the consequences of failing to properly respond to a motion for summary judgment and statement of material facts under *F.R.C.P. 56 and Local Rule 56.1*.[2] Eyiowuawi filed the instant action alleging that the Union failed to arbitrate his employment grievance because of discriminatory animus. In response to Defendant's motion for summary judgment, Eyiowuawi filed a response brief. As Defendant correctly asserts, Eyiowuawi's filings do not comply with the Local rules, and Plaintiff failed to properly respond to or contest any of Defendant's assertion of facts in his response brief. The Court construes pro se pleadings liberally; however, Eyiowuawi's pro se status does not absolve him from complying with the Local rules. *Jones v. Phipps*, 39 F.3d 158, 163 (7th Cir. 1994). Accordingly, the Court deems as admitted Defendant's Local Rule 56.1 statement of facts that are supported by the record.

## II. FACTUAL BACKGROUND

### A. The Hospital and Union's Collective Bargaining Agreement

In 1998, Eyiowuawi began working as a service employee for John H. Stroger Hospital ("Hospital"), a public health care institution and a unit of local government of the State of Illinois. (Def. Stmt. ¶¶ 1,2). The Union, as the collective bargaining unit for service and maintenance employees at the Hospital, represents Eyiowuawi on various employment matters, including disciplinary issues. (O'Neil Decl. ¶¶ 2,4). The collective bargaining agreement ("CBA") between

---

[2] Under Local Rule 56.1(b), a party responding to a motion for summary judgment is required to provide, amongst other things, "a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." Local Rule 56.1(b).

2

the Union and Hospital contains a four-step grievance process.[3] (Def. Stmt. ¶ 5, Ex. A, p. 31). According to the CBA, the Hospital has the right to discipline employees for just cause violations of employment guidelines; including fighting, abuse, or harassment of Hospital patients, employees or visitors. (O'Neil Decl. ¶ 8, Exs. A, p. 31, B). The Hospital is required to hold pre-disciplinary hearings with a a hearing officer when it seeks to discipline an employee. (Def. Stmt. ¶ 8, Ex. A, p. 31). If the hearing officer determines that the Hospital establishes that the employee engaged in misconduct, the hospital may impose discipline on the employee. (Def. Stmt. ¶ 8). After the pre-disciplinary hearing and discipline is imposed, the Hospital has the option to circumvent Steps One and Two of the grievance procedure and proceed to Step Three. (Def. Stmt. ¶ 9). Prior to advancing a case to neutral arbitration, Step Four, or withdrawing a grievance, the Union conducts a pre-arbitration hearing to determine if the grievance is meritless. (Def. Stmt. ¶¶ 10,11).

## B. The Hospital's Disciplinary Action against Eyiowuawi

On January 15, 2004, the Hospital received an anonymous patient complaint that Eyiowuawi used profane language during a telephone conversation. (Def. Stmt. ¶ 16). In February 2004, the Hospital notified the Union that it would conduct a pre-disciplinary hearing to determine whether Eyiowuawi engaged in disruptive behavior and/or abuse of a patient. (Def. Stmt. ¶ 16). Upon notification of the dispute, Carol O'Neil ("O'Neil"), a Union representative, began investigating the allegation against Eyiowuawi, which entailed interviewing witnesess and reviewing the Hosptial's evidence. (Def. Stmt. ¶ 17). At O'Neil's request, the pre-disciplinary hearing was postponed twice

---

[3] Step One allows for a grievance to be submitted to the employee's immediate supervisor within 30 days of the disciplinary action. At Step Two, the Union must submit the grievance to the Hospital Director or Designee within ten days of the Step One decision. At Step Three, the grievance is appealed to the Director of Human Resources or a Hearing Officer within ten days of the Step Two action. At Step Four, if the Union disagrees with the Step Three resolution, the grievance may be taken to arbitration before a neutral third-party.

to facilitate a complete investigation. (O'Neil Decl., ¶ 13).

On April 6, 2004, the pre-disciplinary hearing was held. (Def. Stmt. ¶ 18). At the hearing, the Hospital presented statements from an anonymous patient and three of Eyiowuawi's co-workers describeing Eyiowuawi's use of profane language while on the telephone on January 15, 2004. (Def. Stmt. ¶ 18). The Hospital also presented evidence that two patients had previously filed complaints against Eyiowuawi for rude and unprofessional treatment, and that Eyiowuawi received a one-day suspension in August 2003 for patient abuse. (Def. Stmt. ¶¶ 15,18). At the hearing, O'Neil argued that disciplinary action was unwarranted against Eyiowuawi because the patient complaint was anonymous and, allegedly, the three co-workers had animus against the Plaintiff. (Def. Stmt. ¶ 19). The Hospital ultimately sought a twenty-nine day suspension, which the hearing officer sustained. (Def. Stmt. ¶ 20).

Subsequent to the hearing, O'Neil advanced Eyiowuawi's grievance to Step Three of the grievance procedure. (Def. Stmt. ¶ 21). On May 27, 2004, Hearing Officer Seymour Bentcover determined that the Hospital had just cause to discipline Eyiowuawi and sustained the twenty-nine day suspension. (Def. Stmt. ¶ 21). O'Neil proceeded according to the Union grievance procedures and scheduled a pre-arbitration hearing to determine the likelihood of success at neutral arbitration. (O'Neil Decl., ¶ ¶ 5, 17). On July 19, 2004, Eyiowuawi and O'Neil appeared before the pre-arbitration panel, comprised of two union representatives. (Def. Stmt. ¶ 22). There, they argued the same facts and arguments put forth at the previous hearings. (Def. Stmt. ¶ 20). Eyiowuawi's gender and national origin was never discussed at the hearing. (Def. Stmt. ¶ 25). On September 24, 2004, the panel issued a report concluding that Eyiowuawi's grievance lacked merit and/or the Union could not prevail at arbitration because of Eyiowuawi's prior disciplinary record and the statements

4

of the witnesses to the January 15 event. (Def. Stmt. ¶ 23). The Union refused to proceed to arbitration based upon the panel's conclusions. (Def. Stmt. ¶ 24).

### C. Eyiowuawi's Discrimination Complaint

On July 5, 2005, after exhausting the Union's grievance procedures, Eyiowuawi filed a complaint with the Illinois Department of Human Rights and the Equal Employment Opportunity Commission (EEOC) alleging that the twenty-nine day suspension was the result of unconstitutional gender and national origin discrimination and the Union's failure to represent him during the grievance process. (Pl.'s Compl., Ex. A). Three weeks later, Eyiowuawi requested and received a "right to sue" letter from the EEOC. (Pl.'s Compl., Ex. B). He subsequently filed the instant action alleging gender and national origin discrimination. (Pl.'s Compl., p. 1). In addition, Eyiowuawi alleged a state claim for breach of duty of fair representation. (Pl.'s Compl., p. 1).

## II. STANDARD OF REVIEW

Courts must grant a motion for summary judgment when "there is no genuine issue as to any matter fact and that the moving party is entitled to a judgment as a matter of law." *Fed.R.Civ.P. 56(c)*; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). To defeat a motion for summary judgment, the nonmoving party must establish that there is a genuine dispute over material facts. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "material" fact is any fact that may affect the final adjudication of the case under existing law and if it creates an inference that would a reasonable jury to find in favor of the nonmoving party. *Id.*

The court, however, must evaluate all admissible evidence in a light most favorable to the nonmoving party. *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). Nevertheless, to survive summary judgment, the party must present more than speculation and conjecture. *Id.* In other

words, the nonmoving party cannot rely on the pleadings and "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248.

## III. ANALYSIS

### A. Title VII Claim

Title VII prohibits labor organizations from discriminating against its members based on sex and national origin. 42 U.S.C. 2000e-2(c)(3). To sustain a charge of discrimination under Title VII, a plaintiff may prove discrimination in one of two ways: the direct method or indirect method. *Rogers v. City of Chicago*, 320 F.3d 748, 753 (7th Cir. 2003).

*1. Direct Method*

Under the direct method, the plaintiff supplies sufficient direct or circumstantial evidence that demonstrates discriminatory intent. *Id.* Direct evidence "essentially requires an admission by the decisionmaker that his actions were based on the prohibited animus." *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 616 (7th Cir. 2000). A plaintiff may establish a prima facie case of discrimination using circumstantial evidence under the direct method as well. *See Rudin v. Lincoln Land Co.*, 420 F.3d 712, 720 (7th Cir. 2005). There are three distinguishable types of circumstantial evidence that a Title VII plaintiff may rely upon to prove intentional discrimination: (1) "suspicious timing, ambiguous statements oral or written, behavior toward or comments directed at other employees in the protected group, and other bits and pieces from which an inference of discrimination may be infered;" (2) statistical evidence that similarly situated employees were systematically treated better; or (3) that the plaintiff was qualified for the job but a person without plaintiff's characteristic (i.e. race, sex, etc) was awarded the job and the employer's reason for the unequal treatment is a pretext for invidious discrimination *Id.* at 720-21.

Here, Eyiowuawi fails to provide any evidence, direct or circumstantial, to satisfy the direct method. There is no evidence that the Union acknowledged acting in an arbitrary or discriminatory manner. Nor has Eyiowuawi proffered circumstantial evidence to support his claim of discrimination under Title VII. Eyiowuawi argues, however, that the suspicious timing of his discrimination lawsuit against the Hospital (not an issue in the instant action) and the disciplinary action supports a charge of retaliation and creates an inference of discrimination. The Court finds that Eyiowuawi's argument must fail for several reasons. First, suspicious timing alone does not create a triable issue on whether the Hospital, with the Union's help, sought to punish Eyiowuawi for filing a lawsuit against the Hospital. *See Stone v. City of Indianapolis Pub. Util. Div.*, 281 F.3d 640, 644 (7th Cir. 2002). Furthermore, there is no evidence that the Union conspired with the Hospital to retaliate against Eyiowuawi for exercising his statutory right to file a claim of discrimination. The undisputed evidence reflects that Eyiowuawi had a prior disciplinary record relating to abuse towards patients. After receiving notice of the initial complaint, the Hospital and Union undertook separate investigations to determine whether Eyiowuawi engaged in misconduct. Moreover, the January 15 incident was substantiated with statements from four witnesses. Thus, the timing of the disciplinary action was not suspicious at all and Eyiowuawi has failed to provide direct evidence that would create an inference that the Hospital, with the Union's assistance, retaliated against him.

Further, Eyiowuawi's claim of retaliation under Title VII is not properly before this Court. Eyiowuawi's complaint only alleges gender and national orgin discrimination in violation of Title VII; there is no claim for retaliation, therefore, Eyiowuawi's claim of retaliation is tantamount to adding a new count of Title VII discrimination to the complaint. *See Conner v. Illinois Dep't. of*

7

*Natural Res.*, 413 F.3d 675, 679 (7th Cir. 2005). "It is elementary that parties may not raise new arguments or present new facts in their reply, thus depriving their opponent an opportunity to respond." *Weizeorick v. ABN AMRO Mortg. Group*, 2004 U.S. Dist. LEXIS 15467, *7 (N.D. Ill. 2004). A complaint notifies the opposing party of the facts and legal theories upon which the plaintiff's case relies. *Fed. R. Civ. P. 8*; *Wislocki-Goin v. Mears*, 831 F.2d 1374, 1381 (7th Cir. 1987)("It must be remembered that the principal function of the complaint is to give the court and the opposing party sufficient notice of the allegation to which a response must be made.")

In addition, Eyiowuawi's retaliation claim is outside the scope of his charges with the Illinois Department of Human Rights and the EEOC. (Pl.'s Compl., Ex. A). To sustain a Title VII claim, a plaintiff must first file a complaint with the EEOC detailing the alleged discriminatory conduct within the statutory time period, and the EEOC must issue a right to sue letter. *EEOC v. Harvey L. Walner & Assoc.*, 91 F.3d 963, 970 (7th Cir. 1996). "An aggrieved employee may not complain to the EEOC of only certain instances of discrimination, and then seek judicial relief for different instances of discrimination." *Rush v. McDonald's Corp.*, 966 F.2d 1104, 1110 (7th Cir. 1992). The Seventh Circuit, however, allows plaintiffs to amend their claims of discrimination when an additional claim is "like or reasonably related to" the charge(s) filed with the EEOC. *Cheek v. Western & S. Life Ins.*, 31 F.3d 497, 500 (7th Cir. 1994).

In the case at hand, Eyiowuawi's EEOC complaint only alleges discrimination based on sex and national origin. The EEOC "Charge of Discrimination" form provides many bases for claiming discrimination, including retaliation. (Pl.'s Compl., Ex. A). Given the option to make a claim of retaliation, Eyiowuawi chose not to do so and, in fact, he signed a statement saying: "I believe that I have been denied union representation based on my sex, male, and national origin, Nigerian, in

8

violation of Title VII of the Civil Rights Act of 1964, as amended." (Pl.'s Compl., Ex. A). Nowhere in his charge, does Plaintiff indicate that the Union's refusal to arbitrate his grievance was based on retaliation. Further, Eyiowuawi fails to provide any evidence establishing that the union's alleged act of discriminatory conduct of not proceeding to arbitration is "reasonably related" and in retaliation to his filing of a lawsuit against the Cook County Hospital. Simply, the record is devoid of evidence that Eyiowuawi engaged in any activity, prior to the disciplinary action, for which the Union would retaliate, nor is there any evidence that the Union conspired with the Hospital to retaliate against Eyiowuawi. Though Eyiowuawi claims the suspicious timing of his disciplinary action highlights an improper motive of discrimination and retaliation, those assertions are not enough to overcome his burden of proving evidence that creates an inference of discriminatory retaliation. *See Stone*, 281 F.3d at 644.

*2. Indirect Method*

Additionally, Eyiowuawi has failed to establish a prima facie case of discrimination using the indirect method as well. The indirect method involves the burden-shifting approach as set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Using the indirect method of proof in the context of a labor organization, a plaintiff must show that: (1) his employer breached the collective bargaining agreement between the employer and union; (2) the union did nothing to repair this breach, therefore breaching its own duty of fair representation; and (3) the union's failure to challenge the breach was based on animus towards the plaintiff's status, such as gender or national origin. *Greenslade v. Chicago Sun-Times*, 112 F.3d 853, 866 (7th Cir. 1997).

### i. Breach of the CBA

The undisputed facts reflect that the Hospital did not breach the CBA. The Hospital has the right to discipline employees for violations of employment rules. The Hospital has a policy against its employees using abusive language or behavior towards patients and others. Four witnesses came forward to support the charge that Eyiowuawi used profane language during a telephone conversation. Eyiowuawi provided no witnesses. Again Eyiowuawi argues that the Hospital and the Union retaliated against him for filing a discrimination lawsuit. Eyiowuawi, however, offers no evidence to support that assertion, or at the minimum, evidence that creates an inference of retaliation.

### ii. Union's Breach of Duty of Fair Representation

Next, the Union did not breach its duty of fair representation. "A breach of a statutory duty of fair representation occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." *Vaca v. Sipes*, 386 U.S. 171, 190, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967); *see also Aire Line Pilots Ass'N Int'l v. O'Neill, et al.*, 499 U.S. 65, 67, 111 S.Ct. 1127, 113 L.Ed.2d 51 (1991). A union acts arbitrarily if its behavior "is so far outside a wide range of reasonableness as to be irrational." *Air Line Pilots Ass'n Int'l*, 499 U.S. at 67. To prove discrimination or bad faith, a plaintiff needs to show that the union acted with an inappropriate motive. *Neal v. Newspaper Holdings, Inc.*, 349 F.3d 363, 369 (7th Cir. 2003).

Even viewing the facts in the light most favorable to Plaintiff, the facts reflect that the Union's conduct was anything but arbitrary, discriminatory or in bad faith. In particular, the Union prosecuted Eyiowuawi's grievance although there was no evidence to support his version of the

events. First, O'Neil investigated the incident but determined that no one could support Eyiowuawi's denials. As noted above, Eyiowuawi failed to offer any supporting witnesses at any of the hearings or in his court documents. Second, although the evidence suggested that Eyiowuawi did indeed engage in misconduct, O'Neil objected to the Hospital taking disciplinary action at every stage of the grievance procedure. O'Neil successfully advocated the Hospital to reduce Eyiowuawi's punishment from termination to a twenty-nine day suspension instead. Further, after Eyiowuawi's suspension was sustained, she continued to prosecute the grievance when she scheduled the pre-arbitration hearing on his behalf.

Contrary to Eyiowuawi's repeated assertions, the Union was not obligated to take his grievance to arbitration. *Reed v. Int'l Union of UAW*, 945 F.2d 198, 202-03 (7th Cir. 2001). The decision to take a grievance to arbitration is discretionary an based on a number of factors, including the allocation of resources. *See Id.* at 203. The language of the CBA states that "[i]f the Union is not satisfied with the Step 3 answer it **may**" take the grievance to arbitration. (Def.'s Motion, Ex. A)(emphasis added). The pre-arbitration panel choose not to proceed with arbitration based upon its conclusion that that the grievance lacked merit. No reasonable jury could conclude that the Union acted in bad faith or in a discriminatory manner, particularly when the Union won concessions on Eyiowuawi's behalf.

### iii. Animus Towards Nigerian Males

Additionally, the record is devoid of any evidence that would allow a reasonable jury to infer that the Union's actions were motivated by an anti-male or anti-Nigerian sentiment. Eyiowuawi relies upon unsubstantiated assertions to bolster his claims but, again, fails to provide evidence

11

supporting an inference of animus. O'Neil fully investigated Eyiowuawi's claims and even requested and received additional time to complete her investigation. At every stage of the proceedings, O'Neil challenged implementing disciplinary action, and when left with no alternative, argued for reduction in Eyiowuawi's discipline. Further, a reasonable jury could not conclude that the panel members were motivated by an animus against Nigerian males. The pre-arbitration hearing panel was comprised of an African-American woman and a Hispanic man. Plaintiff's national origin or gender were not discussed at the pre-arbitration hearing. As stated above, the Union was not required to take his grievance to arbitration. There is no evidence, beyond Eyiowuawi's assertions, that the panel decided not to arbitrate his grievance because discriminatory animus toward Nigerian men.

The undisputed facts reflect that the Union was not in violation of Title VII, and therefore, did not have breach its duty of fair representation. Moreover, there is no evidence that the Union's prosecution of the grievance fell short of reasonable expectations or that it otherwise acted in a discriminatory fashion. For these reasons, this Court finds that the Union is entitled to summary judgment on Eyiowuawi's Title VII claim.

### B. State Law Claim for Duty of Fair Representation

Eyiowuawi argues that the Union breached its duty of fair representation by refusing to proceed with arbitration. Illinois Courts have held that the Illinois Labor Relations Board has jurisdiction over duty of fair representations claims against unions representing state and municipal employees. 5 ILCS 315/5; *Cessna v. City of Danville*, 296 Ill. App. 3d 156, 161-63, 693 N.E.2d 1264, 1267-69 (4th District); *Foley v. American Fedr. of State, County & Municipal Employees,*

*Council 31, Local No. 2258*, 199 Ill. App. 3d 6, 10, 556 N.E.2d 581, 583 (1st Dist. 1990). As the Union aptly notes, the Hospital is an arm of the Cook County, Illinois local government, thus, giving the Illinois Labor Relations Board exclusive jurisdiction to decide Eyiowuawi's claim. Accordingly, because this Court lacks subject matter jurisdiction over Eyiowuawi's breach of duty of fair representation claim, Plaintiff's claim is dismissed.

## IV. CONCLUSION

For the reasons set forth above, this Court finds that Eyiowuawi failed to demonstrate any genuine issue of material fact. Accordingly, Defendant Union is entitled to a judgment as a matter of law and its motion for summary judgment is GRANTED. Furthermore, Plaintiff's claim for breach of duty of fair representation is improperly before this Court and is therefore dismissed.

IT IS SO ORDERED.

8/11/06
Dated

The Honorable William J. Hibbler
United States District Court